Former Director, Office of Unified Communications, D.C. and District of Columbia Mr. Brown for the Appellant, Ms. Johnson for the Appellees May it please the Court, my name is Gary Brown and I represent Alexandria Jones on this appeal. One key issue on this appeal is whether or not the Appellant is a member of the District of Columbia. The Appellate, Janice Quintana, knew of the protected speech by Ms. Jones before imposing adverse actions against her. For several reasons, the answer to that is clear, she did not. Perhaps the most important way for us to see that she was aware of the protected speech is a television interview that was aired on January 11, 2008 in which there was no doubt that Ms. Quintana saw it and there was no doubt that Ms. Jones expressed her views about the dangers that might be imposed by the changes in the 9-1-1 system. The lower court basically ignores that information and attempts to put it after an adverse action, but the adverse action that the court is looking at was not. It was the placing Ms. Jones on paid administrative leave on January 10th. Such an action is not adverse. The first adverse action that occurred was on January 18th when she proposed a notice of suspension for 30 days. This was a week after the television interview was aired. What about the Breeden case from the Supreme Court that held that if an adverse action was already in the works, so to speak, before the protected activity, the employer doesn't have to not go through with the adverse action. They can and it won't be deemed causal. It is claimed that there was an adverse action in the work. However, the January 10th putting her on administrative leave was an effort to amend the normal practices to investigate. There was no adverse action proposed. Second, the basis for the adverse action, according to Ms. Quintana, is in dispute. She says that the mayor called her. This hearsay statement has no substance to it. All she said was that the mayor called her, told her to terminate Ms. Jones. By her own views, according to Ms. Quintana. It's not hearsay for her to say that I was told to terminate her. It's not offered for the truth of the matter asserted. It's just offered to prove that that's what he said and that she acted on what he said. And you haven't made the argument that that statement's not admissible. At least you didn't make that below that I saw. Well, Your Honor, I would argue that what Mr. Fenty said or may have said loses its importance by his failure to be a witness and to speak that to the court himself. Did you notice a deposition for him? Did you subpoena him? We tried. But he was not available. Repeatedly tried to tag him. Well, did you move to compel or take some other steps to try to get his testimony? I'm not sure I heard you, Your Honor. Did you move to compel or did you move under Rule 56E to suspend summary judgment so that you could get his deposition? No, and I believe that the information that he had was more in support of the district, that they could have supported what they were saying. The more important thing, I think, is that Ms. Jones clearly testified that she was not insubordinate. Her testimony of what happened in that meeting certainly does not support any basis for discipline, let alone a termination, as Ms. Quintana stated. But the lower court chose to accept Ms. Quintana's observation of that meeting. Clearly, that's not a summary judgment point of view. Ms. Jones said she did nothing to irritate the mayor and was not insubordinate. Those words specifically, and the lower court did not accept that as an assertion of truth. So putting her on the administrative leave or even believing that there was a reason for her to have been disciplined does not justify the 30-day suspension. As a matter of fact, that 30-day suspension was not upheld. So this idea that she may have had this belief that she should discipline her before really doesn't have much validity because of the weakness of the reason that she wanted to discipline her. Well, I'm trying to make sure I understand your argument. Let's suppose I conclude that there is a dispute of fact about whether Quintana believed that she really was insubordinate or whether she really was insubordinate. Isn't it the district's argument that that doesn't matter because ultimately you have to prove that the action was taken because of the protected speech? And if you can't prove that, it doesn't matter if she was disciplined without basis because you're not suing for the discipline and we're not reviewing that discipline? At least the merits of that discipline? Well, yes, it would be ultimately the plaintiff's burden to prove that. However, what the Supreme Court has said is that actions taken so close in time to protected activity certainly give reason to believe or infer that those actions were because of protected activity. And here we have a week. We have a week between the television interview and the first notice of proposed suspension. And there are two other reasons that Ms. Quintana could have known of this protected activity. One is that she was told in an October meeting. The judge discounted that completely because it was not the protected speech where the speech in the October meeting was not a part of the amendment complaint. The lower court dismissed its importance. However, because it was not in the complaint meant it was not a claim for which relief could be granted. It did not mean it wasn't relevant background evidence that should have been considered. And that's the exact situation that came up in United Airlines v. Evans where the court held that the complaint, the claim was untimely. However, it could have been used as relevant background evidence. And here on the issue of what Ms. Quintana knew, she was told in that October meeting exactly what the speech was that Ms. Jones wanted to say. She was concerned about this change in the 9-1-1 system. And she was also told by Ms. Quintana, I mean by Ms. Jones, that she was going to tell city council, tell the mayor, and tell the public. And that's what she did do. There wasn't any follow-up on that statement where she forwarded emails or anything like that subsequent to that general statement about what she was going to do. Well, it was a hearing apparently for whatever reason. The city council decided to have a hearing on December 14th and Ms. Jones asked for a leave to attend that hearing. Someone else denied that request. And that was denied, right. Now, she did not ask Ms. Quintana directly. And the judge points out that it's hearsay. She was told that Ms. Quintana made the decision. However, I think that the strong influence that an employee asking to testify in front of the city council about a district government idea and asked her supervisor for time to do that, that the supervisor would have talked to his or her boss and let Ms. Quintana know in that way that Ms. Jones was considering talking to city council. And, in fact, that leave was denied. That very well could have been a prophylactic action on the part of Ms. Quintana to prohibit the free speech that Ms. Jones sought to exercise. So that's also a way that it could have been inferred that Ms. Quintana knew. It's hard to believe that her supervisor would not have shared that. If we assume for the sake of argument that the supervisor shared that with Quintana and Quintana did say don't let her testify, don't give her leave, how is that, how do you prevail on your First Amendment claim based on that where the speech never occurred? You're just saying that it would be enough for her to retaliate by not approving her leave? That that would get you enough to get to a jury on that claim? Ms. Jones had spoken those words to Ms. Quintana. She knew what she was going to say. If that is what happened and Ms. Quintana denied to leave to prevent Ms. Jones from testifying in front of the city council, it would be interference with their First Amendment rights based on what she knew already, that Ms. Jones had spoken to her about those issues and told her that's what she was going to say. Clearly there's an infringement, there's an abridgment by her prohibiting Ms. Jones from going to that council meeting. The judge actually says that she doesn't see the lower court, the why that Ms. Jones did attend that meeting. I mean she says both things. Both that she knew that she didn't attend on page three or four and that she did attend the meeting later on. But the fact is that she was, Ms. Jones was prohibited from voicing her concerns at that meeting by Ms. Quintana, who knew what she was going to say. And in that sense it was an abridgment. So those three items, the interview, the denial, the leave, and the October meeting all give reason to support the idea that Ms. Quintana knew. And that the start of the adversity against her leaving to termination began at that time. At this point I would like to save my time for a moment. Thank you. Good morning. May it please the court. Holly Johnson for Janice Quintana, who I will note at the outset is at this point sued in her individual capacity. Any claim against the district at this point has been forfeited and abandoned. Ms. Quintana was ordered by the mayor to terminate Ms. Jones. She was ordered by her boss, who runs the whole city, to terminate Ms. Jones. So, and I will definitely discuss some of the questions about an inference of causation here. But even if there was an inference of causation, that fourth element that the plaintiff must establish that disproves Ms. Quintana's reasons for action, just simply has not been proven by Ms. Jones here. In fact, Ms. Quintana has two defenses under the same action defense here. The first being that her boss ordered her to terminate Ms. Jones. And the second being that her boss told her that Ms. Jones was insubordinate. And Ms. Quintana was entitled to take the word of her boss that Ms. Jones was insubordinate. Ms. Jones had a prior item of misconduct on her record for being discourteous to the public. She had an official reprimand. And that also creates a same action defense. That said, even the inference of causation is not existent here. Under Breeden, there can be no temporal proximity. The whole inference created by temporal proximity is simply erased if an adverse action was contemplated, just contemplated, before the protected speech was either made or before the employer learned about the protected speech. And here, 20 minutes after Mayor Fenty left OUC, 20 minutes later, he ordered Ms. Quintana to fire Ms. Jones. Certainly at that point, that adverse action and something lesser, a suspension, was contemplated. So temporal proximity is not an alternative to causation. It is a way of establishing an inference of causation when there is no other evidence. But as this court said in Talavera, even when an adverse action occurs shortly after protected activity, positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine. And here, there is no such positive evidence. I will also note that the argument raised that Ms. Jones told Ms. Quintana, well, I'm going to tell these people, the mayor and the council, about my concerns, it cannot substitute for speech, and I believe Ms. Jones concedes that, and it cannot substitute for knowledge that speech actually occurred. It doesn't raise an inference that Ms. Quintana ever actually knew that Ms. Jones engaged in that speech, especially when Ms. Quintana testified, I didn't know. And that testimony stands unrefuted. Finally, with regard to the allegation that Ms. Quintana is the one who stopped Ms. Jones from attending the hearing, first of all, it's sheer hearsay. Ms. Quintana, Ms. Jones did not depose the supervisor. In fact, she conducted very few depositions at all. And so we have no idea why the supervisor rejected her leave. We have no idea whether it even had to do with the hearing. Maybe she was needed to serve in the 911 call center that day. But beyond that, she can't suggest it was because she engaged in protected speech, as she argued below, because her protected speech did not occur until after that hearing took place. She watched the hearing on TV, and then she wrote the e-mails responding to what was said in the hearing. Finally, she never argued in the district court that the prohibition itself, that being precluded from attending that hearing violated the First Amendment. If this Court has no further questions, I'm happy to rest on my brief. Thank you. Thank you. Do you have a couple minutes for rebuttal? Thank you, Your Honor. I would point out that Ms. Quintana did not follow her boss's instructions to fire or even try to fire Ms. Jones at that time. And so she did exercise her own judgment about it. But beyond that, Ms. Jones is a district employee and as such has a constitutional right to her job so that it can't be taken away by her mayor at his whim because he did not like the way that she talked to him, even if that occurred. She didn't have a constitutional right to her job. She didn't have a constitutional right to engage in protected speech. Well, she does have a constitutional right to engage in protected speech. She certainly has a right to her job and a right to protect her job. And there needs to be due process in taking it away. I'm sorry, Your Honor. And the due process that she was entitled to did not really occur. And it is wrong that she did not engage in the protected speech. She did. She wrote to the city council. She told her boss about her concerns. The question is whether Ms. Quintana knew of her protected speech. According to Ms. Jones' declaration, on January 7th, after the mayor left, she contacted the newspaper, the television. And at that point, they aired something four days later, whether Ms. Quintana knew of that or not. Even by January 11th, it's clear. There's no denial. Ms. Quintana heard her protected speech. The local court doesn't even mention perhaps the most important way that Ms. Jones spoke on television to the news media. And yet she doesn't even mention that as being a reason. But it's clear that that's what she was speaking about. But the lower court does acknowledge that that interview took place. What the lower court says is that the action, the personnel action at issue, began on January 10th, the day before. So the lower court doesn't ignore that Quintana acknowledged that she saw the news story on the 11th. She just says that, you know, she took action the day before that. And I would argue placing an employee on paid administrative leave is not an adverse action. If I had a client who wanted me to take him to court for that reason, the suit would not last long. There's got to be some adversity. And just telling an employee we're going to investigate but you're on paid leave is not an adverse action. Thank you, Ron.  The case is submitted.
judges: Kavanaugh, Wilkins, Edwards